IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | NO. A-06-CR-290 LY |
| | § | |
| DAVID WILLIAM MULLINS | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b), 18 U.S.C. § 3401(i), and Rule 1(d) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges, as amended.

The Court conducted a hearing on May 14, 2014, and heard evidence and arguments from all of the parties with regard to the U.S. Probation Office's Petition seeking to revoke the Defendant's term of supervised release.

I. PROCEDURAL BACKGROUND

On March 16, 2007, the Defendant was sentenced by Judge Yeakel to 63 months in prison, and three years of supervised release, for bank robbery and interference with commerce by robbery, in violation of 18 U.S.C. §§ 2113(a) and 1951. The Defendant was released from the Bureau of Prisons and began supervision on May 21, 2013. Because he had no residence to release into, on May 17, 2013, the Court modified the term of supervision to place Mullins at a Residential Re-entry Center designated by the Bureau of Prisons, for a term not to exceed 180 days. Further, it was recommended that subsistence be waived and Mullins be directed to save 50% of his gross income

to assist him in finding an approved residence. Unfortunately, the local Residential Re-entry Center did not have any space when Mullins was released from BOP. This meant that Mullins was placed at the Dismas Charities in El Paso, Texas to begin supervision. While Mullins did not have any relapse issues or other violations while in El Paso, because he had no contacts there he was unhappy and was unable to find steady employment. Eventually, on September 27, 2013, he left the Dismas Charities and indicated that he no longer wished to reside in El Paso. After three days, however, he was allowed to return there without being considered in violation, and on October 22, 2013, as a result of him still not having a residence, his conditions were again modified, requiring an additional 180 days at the Dismas Charities center.

On January 30, 2014, Mullins signed out of the El Paso facility for a job search, but then failed to return. On February 5, 2014, he reported to the U.S. Probation Office in Austin and stated that he had left the facility in El Paso because there were no employment opportunities for him there, and he did not want to be living in El Paso. At the Court's direction, no warrant was issued for this violation, and the Probation Office was instructed to work with Mullins to assist him in establishing a residence in Austin. Once again, there were no spaces available at the Residential Re-Entry Center in Austin, so Mullins was referred to the Austin Resource Center for the Homeless to find a temporary residence, and was instructed to register for job training. He was also given bus passes to assist with his transportation needs, and was instructed to report weekly until he had a stable residence and job.

In late February, Mullins went to the Probation Office and indicated that he wished to be revoked. In brief, Mullins was no longer at the ARCH, and was residing on the street. Given the cold, Mullins wanted to be revoked. He was not in violation of his conditions, however, so the

probation office made suggestions as to how he could improve his situation. He quickly "solved" his compliance problem, however, by failing to report on March 7, 2014, and any other day in March. Thus, on April 8, 2014, the Probation Office submitted its petition, and on April 10, 2014, the undersigned authorized the issuance of a warrant. The Defendant was arrested on the warrant on May 12, 2014.

On May 14, 2014, the Defendant and his attorney appeared before the undersigned Magistrate Judge. On the same date, the Defendant and his attorney signed a Consent to Allocution Before United States Magistrate Judge. Pursuant to 28 U.S.C. Section 636(a) and 18 U.S.C. § 3401(i), the Court held a Supervised Release Revocation Hearing, at which time the Defendant pleaded "True" to the allegations of the Petition.

## II.  FINDINGS OF THE COURT

1. The Defendant was competent to make the decision to plead true to the petition.

2. The Defendant had both a factual and rational understanding of the proceedings against him.

3. The Defendant does not suffer from any physical or mental impairment that would affect his ability to fully understand the charges against him or the consequences of his plea.

4. The Defendant has not had any injury that would affect his judgment in pleading true or that would affect his understanding of the basis, consequences, or effect of his plea.

5. The Defendant was sane and mentally competent to stand trial for these proceedings.

6. The Defendant was mentally competent to assist his attorney in the preparation and conduct of his defense.

7. The Defendant received a copy of the Petition naming him, and he read it.

8.   The Defendant understood the Petition and the charges against him, and had the opportunity to discuss the Petition and charges with his attorney.

9.   The Defendant understood that he had the right to present evidence and to cross-examine witnesses at the hearing, and waived that right.

10.  The Government, without objection from the Defendant, gave a summary of the evidence against the Defendant.

11.  The plea of true was freely, intelligently, and voluntarily made by the Defendant.

12.  The Defendant understood all of his statutory and constitutional rights and desired to waive them.

13.  The Defendant voluntarily gave consent to allocute before the United States Magistrate Court.

14.  The Defendant violated conditions of his supervised release by failing to report as directed.

### III.  RECOMMENDATION

The Court has carefully considered all of the arguments and the evidence presented by the Government and the Defendant, and has taken into account the policy statements in Chapter Seven of the Sentencing Guidelines.  The most serious violation would is a Grade C, and the Defendant's criminal history category is III, resulting in an (advisory) guideline range of 5 to 11 months of imprisonment.

In this instance, the Court believes that revocation is not warranted.  Through no fault of the Defendant's, he has not been given the resources needed to give him a clear opportunity to establish a residence and stable employment.  Because of a lack of adequate halfway house resources in

Austin, he was forced to reside in El Paso for several months, despite having no contacts there, and having never lived there. Unsurprisingly, he was not able to make headway in establishing a residence or stable job in El Paso. When he returned to Austin, we still did not have a halfway house space, and Mullins was homeless, living at ARCH. When he failed to obtain a TB test, he was then forced to leave ARCH and live on the street, in the middle of winter. Mullins admits that some of the problems he has faced are of his own doing, and the Court believes that he does bear some responsibility for not being able to remain at ARCH. At the same time, trying to find a job when one is homeless is difficult enough, much less when one has the criminal record Mullins has. Therefore, given the events which hampered Mullins' success on supervised release, the Court believes that he should be permitted to remain on supervision, with the resources that should have been in place from the start. To that end, the Court **RECOMMENDS** as follows:

1. The Defendant should be continued on supervision, with a modification to his supervision conditions requiring that he remain in the custody of the U.S. Marshal until a bed space is available at the Austin Transition Center;

2. The Defendant's conditions be modified to require that he reside at the Austin Transition Center for a period up to 180 days; and

3. The Defendant participate in such mental health counseling as the Probation Office directs.

**ACCORDINGLY IT IS RECOMMENDED** that the Defendant be **CONTINUED** on supervised release as set forth above.

As noted in Court, while the circumstances related above have hindered Mullins' ability to be successful on supervision, this does not mean that he is absolved from responsibility for his actions moving forward. To establish a permanent residence and stable employment will require a

commitment by Mullins, and if he fails to make that commitment, he will likely end up with his supervised release being revoked.

## IV. OBJECTIONS

In writing following the Court stating on the record its recommendation in this case, the parties waived the ten day period in which they may file of objections to this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglas v. United Services' Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).  Accordingly, there will be no objections to this Report and Recommendation, and the matter is ripe for the District Court to act upon it.  The Clerks is ORDERED to mail each Party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 14th day of May, 2014.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE